UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**WEST NECK COMMUNITY**
**ASSOCIATION, INC.,**

        **Plaintiff,**

v.                                                                             Civil Action No. 2:22cv491

**JBWK, LLC,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This removed state court action is before the court on Plaintiff West Neck Community Association, Inc.'s ("West Neck") Motion to Remand. (ECF No. 9). On November 23, 2022, Defendant JBWK, LLC ("JBWK") removed the underlying action from Virginia state court to this court asserting diversity jurisdiction. (ECF No. 1). West Neck now seeks to remand the case back to state court on the grounds that diversity jurisdiction has not been established. JBWK opposes the motion. (ECF No. 13). After reviewing the parties briefing, the court directed additional pleadings. (ECF No. 21). Thereafter West Neck filed a Complaint, (ECF No. 22), and JBWK filed an Answer, (ECF No. 23). These documents confirm that this court has diversity jurisdiction over the removed action. Accordingly, as set out in detail below, this Report recommends that the court deny West Neck's Motion to Remand.

        **I.**        **FACTUAL AND PROCEDURAL BACKGROUND**

This case involves a planned retirement community known as The Villages at West Neck, located in the Virginia Beach, Virginia. Mem. Supp. Mot. Remand ("Pl.'s Mem.") (ECF No. 10, at 1). The community is roughly 575 acres in size and originally included several amenities, including a recreation center, pool, and golf course. Id. West Neck is the governing association

for the community and was established by a document titled "Declaration of Covenants, Conditions, and Restrictions for West Neck" (the "Declaration"). Compl. ¶ 1 (ECF No. 22, at 1). The Declaration sets out various covenants and conditions for the community relating to maintenance, landscaping, land use, and other matters. Mem. Opp'n Mot. Remand ("Def.'s Opp'n"), Ex. A (ECF No. 13-1).

In December 2018, BayMark Golf, LLC ("BayMark")—the then-owner and operator of the community's golf course—conveyed the approximately 178-acre golf course property to a trustee by Deed of Trust as security for BayMark's lender. Def.'s Opp'n, Ex. C ("Substitute Trustee's Deed") (ECF No. 13-3, at 2). BayMark also executed two promissory notes in favor of the lender. Id. However, due to financial problems, BayMark closed the golf course in September 2019. Def.'s Opp'n (ECF No. 13, at 4). The lender later sold the promissory notes and assigned its rights under the Deed of Trust to WC Capital, LLC ("WC Capital"), which foreclosed on the property. Substitute Trustee's Deed (ECF No. 13-3, at 2–3). In April 2020, WC Capital purchased the property for $2,325,000.00 at the foreclosure sale and took ownership of the land. Id. at 3.

Due to difficulties obtaining the necessary equipment and personnel, WC Capital struggled to mow the grass, trim shrubbery, and otherwise maintain the golf course. Def.'s Opp'n (ECF No. 13, at 5). The condition of the property evidently concerned some members of the community, leading to a lawsuit in Virginia state court.[1] Id. To separate the golf course property from certain homeowners, WC Capital built a metal fence near the rear property line. Pl.'s Mem. (ECF No. 10, at 2). Additionally, sometime during the summer of 2020, WC Capital leased the property to

---

[1] The case, captioned City of Virginia Beach v. WC Capital, LLC, No. 2:21-cv-372, was eventually settled. Def.'s Opp'n (ECF No. 13, at 5).

2

JBWK[2] for the purpose of operating a tree farm to offset lost costs. Def.'s Opp'n (ECF No. 13, at 5). JBWK planted approximately 700 nursery trees on the property and plans to plant additional trees in the future. Answer ¶ 14 (ECF No. 23, at 5). In June 2022, WC Capital merged with JBWK, with JBWK remaining as the surviving entity. Def.'s Opp'n (ECF No. 13, at 5). As a result, JBWK is now record owner of the golf course property.

On September 28, 2022, West Neck filed a Warrant in Debt in Virginia Beach General District Court against JBWK seeking to collect fines it ostensibly assessed due to JBWK's violation of the Declaration. Notice of Remand, Ex. A ("Warrant in Debt") (ECF No. 1-1). JBWK did not initially seek removal, but contested the filings in state court. But during a hearing before the state court judge, West Neck's counsel argued that the suit would also involve claims for injunctive relief. Notice of Removal, Ex. C ("Hr'g Tr.") 6:21 (ECF No. 1-3, at 7) ("So in this case we're seeking injunctive relief"). Arguing that West Neck's newly asserted injunctive relief claims might negatively impact their 178-acre property, JBWK removed the case to this court, asserting diversity jurisdiction and affirmatively alleging an amount in controversy greater than $75,000.00.[3] Notice of Removal ¶ 5, 14 (ECF No. 1, at 2, 5). West Neck filed the instant motion

---

[2] WC Capital and JBWK are both owned by David LaClair, who is the sole member of both LLCs. Def.'s Opp'n, Ex. D ¶ 2 (ECF No. 13-4, at 1).

[3] The issue of injunctive relief surfaced prior to removal, and the state court judge had ordered West Neck to file a Bill of Particulars by December 19, 2022, elaborating on the single monetary claim asserted in the Warrant in Debt. The court also ordered JBWK to file a responsive pleading no later than January 17, 2023. Because the case was removed before either deadline passed, West Neck filed no pleading in state or federal court elaborating on its claims for relief. As a result, JBWK did not file a responsive pleading.

Instead, JBWK filed a motion to dismiss or, in the alternative, for a more definite statement. (ECF No. 5). That motion argued that the state court Warrant in Debt contained insufficient allegations to state a claim for relief, and as a result, the court should dismiss it, or direct West Neck to amplify its claims in a more definite statement, the federal court equivalent to a Bill of Particulars. Mem. Supp. Mot. to Dismiss (ECF No. 6, at 6–7). Because West Neck had not filed a more detailed statement of its claims, JBWK also moved the court to extend the time fixed by the state court for its responsive pleadings, observing that the state court order directing the response was contingent upon West Neck's filing a Bill of Particulars. Mot. for Extension (ECF No. 15). The court resolved the pleading squabble by ordering West Neck to file a

3

to remand, arguing that diversity jurisdiction has not been established. Pl.'s Mem. (ECF No. 10, at 3–8). JBWK opposed the motion, (ECF No. 13), and West Neck responded, (ECF No. 17).

## II. LEGAL STANDARD

An action filed in state court is subject to removal to federal court if a federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over all civil actions in which diversity jurisdiction exists—that is, civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

## III. ANALYSIS

Because JBWK sought removal of this action on the basis of diversity jurisdiction, the court will not consider any other possible grounds for removal. West Neck argues that diversity jurisdiction does not exist because JBWK has failed to establish diverse citizenship and the amount in controversy is limited to the $900.00 claim asserted in the Warrant in Debt. Pl.'s Mem. (ECF No. 10, at 3–7). JBWK disagrees, arguing that diversity jurisdiction exists because West Neck and JBWK are citizens of different states and the amount in controversy requirement is satisfied, given that West Neck seeks injunctive relief and the value of the property to be enjoined is greater than $75,000.00. Def.'s Opp'n (ECF No. 13, at 7–14). For the reasons explained below, I largely agree with JBWK and conclude that diversity jurisdiction exists in this case.

---

complaint providing a more definite statement of its claims. (ECF No. 21, at 4). The court also ordered JBWK to file an answer. Id.

4

A.   **West Neck Has Asserted a Claim for Nonmonetary Relief.**

When removal is sought on the basis of diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy," 28 U.S.C. § 1446(c)(2). However, "the notice of removal may assert the amount in controversy if the initial pleading seeks nonmonetary relief." § 1446(c)(2)(A)(i). The initial pleading in this case is the Warrant in Debt filed by West Neck in state court, which seeks monetary relief in the amount of $900.00. Warrant in Debt (ECF No. 1-1). However, West Neck's counsel indicated at the state court proceeding that in addition to their monetary claim, they are also seeking injunctive relief against JBWK. Hr'g Tr. 6:21 (ECF No. 1-3, at 7) ("So in this case we're seeking injunctive relief"). Additionally, in the memorandum it filed in support of the instant motion, West Neck acknowledged that it is requesting injunctive relief. Pl.'s Mem. (ECF No. 10, at 7) ("Assuming this court wishes to look beyond the face of the Warrant in Debt and wants to consider West Neck's request for injunctive relief (i.e., requiring the JBWK to comply with the Governing Documents) . . . ."). When ordered by this court to clarify its claims in a formal complaint, West Neck filed a complaint moving the court to award fines in the amount of $900.00 and to

> order [JBWK] to maintain the golf course parcels in full compliance with [West Neck's] Declaration and rules, including, but not limited to, maintaining the golf course parcels in compliance with the Declaration, the architectural guidelines and the community-wide standard and the removal of the spite fence and the tree farm on the golf course parcels.

Compl. ¶ 26a (ECF No. 22, at 6) (cleaned up). On this record, I find that West Neck has plainly asserted a claim for nonmonetary relief, and therefore the monetary demand in the Warrant in Debt does not solely determine amount in controversy in this action. JBWK rightfully asserted—and the court may consider—the amount in controversy in the notice of removal.

### B. A Preponderance of the Evidence Indicates that the Amount in Controversy Exceeds $75,000.00.

"[R]emoval of an action is proper on the basis of an amount in controversy asserted [in a notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000.00]." § 1446(c)(2)(B). As noted above, as the party seeking removal, JBWK bears the burden of showing by the preponderance of the evidence that the amount in controversy exceeds that jurisdictional threshold.

JBWK makes the same general argument on this issue in its notice of removal, opposition, and answer. It contends that, when injunctive or declaratory relief is sought, the amount in controversy is determined by the value of the object of the litigation. See Notice of Removal ¶ 14 (ECF No. 1, at 5) (citing Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013); Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)); Def.'s Opp'n (ECF No. 13, at 11). More narrowly, JBWK argues that when the nonmonetary relief involves real property, "the value of the real property determines the amount in controversy." Notice of Removal ¶ 14 (ECF No. 1, at 5) (citing Creech v. Everbank, 467 F. Supp. 3d 425, 431 (E.D. Va. 2020)); Def.'s Opp'n (ECF No. 13, at 10–11) (same); Answer ¶ 27 (ECF No. 23, at 7–8) (same). JBWK therefore argues that the golf course property—not West Neck's $900.00 enforcement demand—is "the true object of the litigation" and should therefore determine the amount in controversy in this case. Def.'s Opp'n (ECF No. 13, at 11). To that end, JBWK asserts that the golf course property "has been assessed at more than $4.25 million and has a value at least equal to that amount." Id. at 12; Notice of Removal ¶ 14 (ECF No. 1, at 5); Answer ¶ 27 (ECF No. 23, at 7). JBWK also claims that the value of its right to cultivate trees on the property, Def.'s Opp'n (ECF No. 13, at 13–14), and the maintenance required to bring the property into compliance with the Declaration, Answer ¶ 27 (ECF No. 23, at 8), are both independently worth over $75,000.00.

West Neck disagrees, arguing that "the amount in controversy is $900.00, well below the jurisdiction threshold for this court." Pl.'s Mem. (ECF No. 10, at 7). In its view, "[JBWK's] reliance on Creech and Francis is misplaced." Id. at 6. West Neck distinguishes Creech based on the fact that the relief requested by the plaintiff in that case was a declaratory judgment preventing a bank from foreclosing on the plaintiff's home. Id. And Francis is distinguishable as well, West Neck contends, because the record in that case contained no evidence regarding the value of the damages sought, leading the court to use its "experience and common sense" to determine that value itself. Id. at 6–7. West Neck emphasizes that this case does not involve a foreclosure sale like Creech, and its Warrant in Debt specifically states the damages sought ($900.00), unlike the record in Francis. Id.

West Neck also argues that, even if its nonmonetary claims are included, the cost of compliance with the requested injunction—not the value of the property—should be determinative. Id. at 7; see also Pl.'s Reply (ECF No. 17, at 2–3). It claims that JBWK has failed to show that the costs of complying with the injunctive relief sought would exceed $75,000.00. Pl.'s Opp'n (ECF No. 10, at 7); Pl.'s Reply (ECF No. 17, at 2–3). As noted above, JBWK responded in its answer with an allegation that the maintenance required to bring the property into compliance with the Declaration would cost over $75,000.00. Answer ¶ 27 (ECF No. 23, at 8).

The basic principle underlying JBWK's argument is correct and controlling. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977); Francis, 709 F.3d at 367. West Neck's attempt to avoid the application of this principle by distinguishing Francis is unpersuasive. The plaintiffs in Francis requested a declaratory judgment compelling indemnification of costs and attorneys' fees

7

associated with an underlying tort action <u>and</u> the declaratory judgment action before the court. <u>Francis</u>, 709 F.3d at 367. However, the plaintiffs' declaratory judgment complaint <u>only</u> specified the exact amount of monetary damages they were requesting in relation to the underlying tort action, which amounted to $66,347.00. <u>Id.</u> In opposing removal by the defendant, the plaintiffs argued that the "object of the litigation" was limited to the attorneys' fees in the underlying action, which failed to clear the $75,000.00 threshold for diversity jurisdiction. <u>Id.</u> at 368. The defendant took the opposite position that the attorneys' fees in the declaratory judgment action were also an object of the litigation and would likely push the amount in controversy over $75,000.00. <u>Id.</u> The Fourth Circuit agreed with the defendant, noting that the plaintiffs' decision to argue in favor of a more restrictive interpretation of the damages claimed in their complaint in hopes of avoiding removal was made "with insight flowing from 20–20 hindsight." <u>Id.</u>

West Neck asserts that the <u>Francis</u> court was only required to determine the amount in controversy because of the plaintiffs' failure to fully state the extent of their monetary damages—an error West Neck has not made here. Pl.'s Mem. (ECF No. 10, at 6–7). But West Neck fails to appreciate that the <u>Francis</u> court made that determination because of the plaintiffs' failure to fully specify the extent of their monetary damages <u>coupled with</u> the fact that the unspecified damages were an object of the litigation. And in making their argument, West Neck leverages the benefit of "insight flowing from 20–20 hindsight," <u>Francis</u>, 709 F.3d at 368, conveniently omitting the fact that their claim for relief—like the plaintiffs' claim in <u>Francis</u>—is not limited to the monetary damages specified in their initial pleading. In addition to their request for $900.00 in fines, West Neck also requests nonmonetary relief in the form of an injunction compelling JBWK to manage the golf course property in compliance with the Declaration. Compl. ¶ 26a (ECF No. 22, at 6).

This nonmonetary relief is clearly an object of the litigation and therefore it must be considered in the court's assessment of the amount in controversy.

However, notwithstanding this conclusion, I agree with West Neck that <u>Creech</u> is not applicable here. JBWK represents that <u>Creech</u>—and eight other cases—hold that, in a case involving an injunction implicating real property, the value of the real property determines the amount in controversy. Def.'s Opp'n (ECF No. 13, at 11). But these cases do not establish so broad a rule. As West Neck points out, the plaintiff in <u>Creech</u> requested an injunction preventing a bank from foreclosing on the plaintiff's property. <u>Creech</u>, 467 F. Supp. 3d at 431. The plaintiffs in the other cases cited by JBWK were similarly seeking injunctive or declaratory relief relating to foreclosure proceedings or ejectment. <u>See</u> Rehbein v. CitiMortgage, Inc., 937 F. Supp. 2d 753 (E.D. Va. 2013) (foreclosure); Monton v. Am.'s Servicing Co., No. 2:11cv678, 2012 WL 3596519 (E.D. Va. Aug. 20, 2012) (foreclosure); Sherman v. Litton Loan Servicing, L.P., 796 F. Supp. 2d 753 (E.D. Va. 2011) (foreclosure); Harrell v. Caliber Home Loans, Inc., 995 F. Supp. 2d 548 (E.D. Va. 2014) (foreclosure); Peterson v. Sucro, 93 F. 2d 878 (4th Cir. 1938) (ejectment); Buford v. Ocwen Loan Servicing, LLC, No. 2:18cv154, 2018 WL 4365588 (E.D. Va. July 13, 2018) (foreclosure); Wright v. U.S. Bank, N.A., No. 3:14cv775-HEH, 2015 WL 12839124 (E.D. Va. Jan. 7, 2015) (foreclosure); Wingate v. Ocwen Loan Servicing, LLC, No. 2:18cv167, 2018 WL 3341186 (E.D. Va. July 6, 2018) (foreclosure). In that context, the value of the property at issue was the appropriate measure of the amount in controversy because the object of the litigation was <u>ownership</u> or <u>possession</u> of the property. Put another way, because the nonmonetary relief in these cases implicated ownership or possession of the property, the value of that relief also implicated the value of the property itself.

Here, the relief West Neck requests does not implicate or challenge JBWK's ownership of the golf course property. Nor has JBWK provided any evidence that the injunctive relief would render the property worthless, thereby placing the entire value of the property at stake by default. In short, ownership of the golf course property is not the proper object of this litigation, the rule articulated in Creech does not apply, and JBWK's evidence of the property's $4.25 million tax-assessed value does not determine the amount in controversy.

Rather, the object of the litigation is JBWK's right to use the golf course property free of the covenants contained in the Declaration. As JBWK correctly argues, all of West Neck's claims are "necessarily dependent upon an assertion that . . . the Declaration is applicable to the Property." Def.'s Mem. (ECF No. 13, at 11). JBWK has alleged that "the value to JBWK of being able to cultivate trees on the Property"—which is not permitted under the Declaration—"is significantly in excess of $75,000." Id. at 14. It has also alleged that the cost of the maintenance required to bring the property into compliance with the Declaration would exceed $75,000.00. Answer ¶ 27 (ECF No. 23, at 8). Both allegations were supported by affidavits from the JBWK employee responsible for managing the property, who has extensive experience managing golf courses and contracting for landscaping services. See Def.'s Opp'n, Ex. B (ECF No. 13-2); Answer, Ex. B, (ECF No. 23-2). In light of these claims, JBWK has established by a preponderance of the evidence that the amount in controversy in this action is in excess of $75,000.00.

C.  **West Neck and JBWK are Citizens of Different States.**

JBWK also bears the burden of establishing diverse citizenship. For the purposes of establishing diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."

28 U.S.C. § 1332(c). By contrast, "the citizenship of a limited liability company . . . is determined by the citizenship of all its members." Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). JBWK stated in its notice of removal that West Neck "is a Virginia non-stock corporation with its principal place of business located in Virginia Beach, Virginia." Notice of Removal ¶ 3 (ECF No. 1, at 1). It also stated that "JBWK is a limited liability company organized and existing under the laws of the State of New Mexico. JBWK's sole member is an individual who is a resident of the State of Florida." Id. ¶ 4, at 2.

The parties do not appear to dispute that West Neck is a citizen of Virginia. Rather, West Neck argues that JBWK has not alleged facts regarding its own citizenship that are sufficient to establish complete diversity. Pl.'s Mem. (ECF No. 10, at 3). Specifically, West Neck points out JBWK's failure to provide the identity of its sole member beyond merely stating that the member is a resident of the state of Florida. Id. That failure, West Neck argues, constitutes a violation of Local Civil Rule 7.1(A)(1)(b), which "raises a strong inference that JBWK's bare allegation cannot withstand scrutiny." Id. at 4. West Neck also raises the possibility that JBWK and WC Capital's merger was done to manufacture diversity jurisdiction for this litigation. Id. at 4–5.

Among other things, Local Civil Rule 7.1 requires litigants who are business entities to file disclosure statements identifying the names and citizenship of their owners or members. Contrary to West Neck's contention, a party's failure to file a compliant disclosure statement does not create an inference that allegations in other initial pleadings are somehow misleading or false. Nor does West Neck provide any factual basis to support its assertion that JBWK merged with WC Capital to create jurisdiction for this case. And to the extent West Neck is correct that the facts alleged in JBWK's notice of removal are insufficient to establish diverse citizenship, I find that JBWK subsequently remedied the alleged deficiency by identifying its sole member on several occasions.

11

In its opposition to the instant motion, JBWK stated that its "sole member is Mr. David LaClair, a citizen of the State of Florida," and that "Mr. LaClair is not domiciled within the Commonwealth of Virginia, nor has he been since 2015." Def.'s Opp'n (ECF No. 13, at 8). These assertions were supported by an affidavit signed by Mr. LaClair. See Def.'s Opp'n, Ex. D (ECF No. 13-4). That affidavit was also incorporated in JBWK's answer by reference. Answer ¶ 2 (ECF No. 23, at 2). Consequently, I find that complete diversity exists in this action.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court APPROVE the foregoing facts, FIND that diversity jurisdiction exists, and DENY West Neck's Motion to Remand, (ECF No. 9).

## V.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 28, 2023