IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WEST NECK COMMUNITY
ASSOCIATION, INC.,

      Plaintiff/Counterclaim Defendant,

v.                                    Civil Action No. 2:22-cv-00491

JBWK, LLC,

      Defendant/Counterclaim Plaintiff.

**AMENDED ANSWER AND COUNTERCLAIM**

NOW COMES JBWK, LLC ("JBWK"), by counsel, and in accordance with that certain Scheduling and Pretrial Order entered by the Court on July 19, 2023 [ECF 31], files this (i) Amended Answer (the "Answer") to the Complaint ("Complaint") filed by West Neck Community Association, Inc. (the "Association"); and (ii) Counterclaim against the Association. All allegations in the Complaint not specifically admitted are hereby denied. And for its Answer, JBWK respectfully states as follows:

**Parties**

1.      The allegations contained in paragraph 1 of the Complaint are admitted to the extent that they allege that the Association is a non-stock corporation organized and existing under the laws of the Commonwealth of Virginia. The Association's existence was authorized pursuant to, *inter alia,* that certain Declaration of Covenants, Conditions, and Restrictions for West Neck (the "Declaration"), which was recorded in the land records for the City of Virginia Beach, Virginia on March 27, 2000 at Deed Book 4218, page 1530. A true and correct copy of the Declaration is attached hereto as **Exhibit A**. Although the allegations in paragraph 1 of the Complaint reference amendments to the Declaration, two (2) such amendments, both recorded by

the Association on or about August 18, 2022, are not valid. Finally, to the extent that the allegations in paragraph 1 of the Complaint are intended to incorporate by reference a document which is not attached to the Complaint, those allegations are denied.

2.      JBKW admits that certain real property located in Virginia Beach, Virginia, and more specifically identified as tax map parcel numbers: (i) 14938595200000; (ii) 14936674360000; (iii) 14936378940000; (iv) 14935439520000; (v) 14937578690000; (vi) 14937597050000 (collectively, the "Property") was conveyed to WC Capital, LLC ("WC Capital"), JBWK's predecessor in title by reason of merger.[1]  JBWK admits that WC Capital acquired the property by virtue of a Substitute Trustee's Deed, executed by Peter G. Zemanian, Trustee (the "Trustee"), which is recorded in the land records for the City of Virginia Beach, Virginia as instrument no. 20200609000490110, and Corrected Substitute Trustee's Deed, recorded in the land records for the City of Virginia Beach, Virginia as instrument no. 202103052602.  The terms of the Substitute Trustee's Deed and the Corrected Substitute Trustee's Deed speak for themselves, and thus the allegations contained in paragraph 2 of the Complaint are denied to the extent inconsistent therewith.  JBWK has no reason to dispute that the Property is included within the legal description attached to the Declaration as initially recorded.

3.      JBWK acknowledges that there is no deed or other instrument conveying the Property from WC Capital to JBWK recorded in the land records for the City of Virginia Beach, Virginia.  However, it is not required to do so in order to be vested with title as the surviving entity in a merger.  See *New Mexico Statutes §53-19-62.2.*  The merger of WC Capital into JBWK, with JBWK remaining as the surviving entity, was approved by the New Mexico

---

[1] For ease of reference, WCC and JBWK will be referred to collectively as "JBWK".

Secretary of State and the Certificate of Merger was recorded with the Virginia State Corporation Commission.

4.      JBWK is the owner of the Property by reason of the merger of WC Capital into JBWK.  In paragraph 4 of the Complaint, the Association uses the defined term "Owner" to describe JBWK in an apparent attempt to enhance its narrative given the import of that term in the Declaration.  JBWK is not an "Owner" as that term is defined in the Declaration.

5.      While JBWK has not confirmed that the Property is included within the legal description attached to the Declaration, at this juncture it has no reason to dispute that the Property is included within the legal description attached to the Declaration as initially recorded. The remaining allegations in paragraph 5 of the Complaint call for a legal conclusion and thus are neither admitted nor denied.

6.      The allegations contained in paragraph 6 of the Complaint are denied.  Indeed, the document attached as Exhibit 2 to the Complaint is an excerpt from a purported amendment to the Declaration attempted by the Association on August 18, 2022 with a stated purpose of altering various definitions in the Declaration in order to give the Association control over both JBWK and the Property.  The purported amendment is not effective since it was executed in contravention of the terms of the Declaration.

7.      The language of the Declaration speaks for itself, and thus the allegations contained in paragraph 7 of the Complaint are denied to the extent inconsistent therewith.

8.      The language of the Declaration speaks for itself, and thus the allegations contained in paragraph 8 of the Complaint are denied to the extent inconsistent therewith.

9.      The language of the Declaration speaks for itself, and thus the allegations contained in paragraph 9 of the Complaint are denied to the extent inconsistent therewith.

10.     The language of the Declaration, which includes the Restrictions and Rules, speaks for itself, and thus the allegations contained in paragraph 10 of the Complaint are denied to the extent inconsistent therewith.

11.     The language of the Declaration speaks for itself, and thus the allegations contained in paragraph 11 of the Complaint are denied to the extent inconsistent therewith.

12.     The allegations contained in paragraph 12 of the Complaint are denied as stated. More to the point, the various restrictions referenced in paragraph 12 of the Complaint do not apply to JBWK, as the holder of the declarant rights under the Declaration, or to the Property (to the extent that it is governed by the Declaration) since it is exempt from the language cited in paragraph 12.

13.     The allegations contained in paragraph 13 of the Complaint are denied as stated. JBWK did cause a division fence to be constructed between a portion of its Property and certain other adjoining properties as permitted by Virginia law.  The division fence was not constructed because the adjoining lot owners "raised concerns", but rather because they threatened to file a lawsuit for so-called "private nuisance" alleging, among other things, that vegetation was encroaching onto their lots from the Property.  Indeed, it appears that various adjoining property owners intended to file a series of law suits against JBWK, based upon that premise despite both the Declaration and Virginia law prohibiting any such suits, in the hopes of driving up JBWK's costs – and presumably motivating it to sell the Property.  Considerably more than three (3) people have spoken with JBWK, and its predecessor in title WC Capital, regarding the Property. The vast majority of those discussions did not result in conduct by the adjoining property owner which, in JBWK's view, necessitated a division fence.  For those limited disputes which did rise to that level, the division fence resolved the issue.  See *Va. Code §55.1-2821.*

4

14.     JBWK admits that it has planted nursery trees on the Property and plans to plant additional nursery trees on the Property in the future in order to generate income while it determines what to do with the Property.  JBWK admits that it did not receive "express authorization" from the Association to plant a tree farm but denies that it needed any such authorization or that the language of the Declaration prohibited JBWK from taking any of the actions which it has undertaken to date.

15.     The allegations contained in paragraph 15 of the Complaint are denied as stated. JBWK did not need permission from the Association to take the actions at issue, nor is it in violation of the Declaration as a result.

16.     The allegations contained in paragraph 16 of the Complaint are denied as stated.

17.     The allegations contained in paragraph 17 of the Complaint are denied.  JBWK does acknowledge that the Association scheduled what it referred to as a "due process hearing". JBWK appeared with counsel in order to listen to what the Association had to say.  The parties disagreed at that meeting as to whether there was a violation of the Declarations – or even whether the Declarations applied.

18.     The allegations contained in paragraph 18 of the Complaint are denied as stated. The Association did, however, send one or more letters to JBWK asserting certain rights with respect to the Property.  The Association also filed a state court action asserting a claim for amounts which – even assuming the Association's arguments were correct – were not due.

19.     The allegations contained in paragraph 19 of the Complaint are denied as stated. There are no "violations" as alleged in paragraph 19.

20.     The allegations contained in paragraph 20 of the Complaint are denied.  JBWK acknowledges that it has not agreed to the Association's "demands", but denies that it is obligated to do so.

21.     The allegations contained in paragraph 21 of the Complaint are denied.

22.     The allegations contained in paragraph 22 of the Complaint are denied.

23.     The allegations contained in paragraph 23 of the Complaint call for a legal conclusion and thus are neither admitted nor denied.  To the extent a response is required, the allegations are denied to the extent inconsistent with the statute cited therein.

24.     The language of the Declaration speaks for itself, and thus the allegations set forth in paragraph 24 of the Complaint are denied to the extent inconsistent therewith.

25.     The language of the Declaration and the statute speaks for itself, and thus the allegations set forth in paragraph 25 of the Complaint are denied to the extent inconsistent therewith.

26.     The allegations contained in paragraph 26 of the Complaint call for a legal conclusion and thus are neither admitted nor denied.  To the extent that a response is called for, the allegations are denied as stated.

## Affirmative Defenses

1.      JBWK will rely upon the affirmative defense of waiver.  To the extent that the Association is proceeding under the Declaration, with limited exceptions not applicable to this proceeding that instrument requires that all parties – including the Association – comply with the dispute resolution provisions set forth in Article XVI before commencing legal action to pursue a "Claim" as that term is defined in the Declaration.  See *Exhibit A, pp. 54-56.*

2.      In September of 2021, the Association and WC Capital (as JBWK's predecessor in interest) participated in mediation regarding the Association's complaint that the grass was not being cut with sufficient frequently.

3.      At that juncture, JBWK had not (i) erected any structures on the Property; or (ii) planted nursery trees on the Property.

4.      The Declaration imposes the requirement for mediation on a claim-by-claim basis.  See *Exhibit A, p. 54, §16.1.*  Accordingly, any grievances which the Association had that qualify as a Claim, but which did not arise until after September of 2021, should have been subject to the mandatory meditation procedures set forth in the Declaration.  Having failed to do so prior to initiating litigation, the Association has waived those Claims.

5.      JBWK intends to rely upon the affirmative defense of first breaching party.

6.      JBWK reserves the right to assert other affirmative defenses as they are discovered.

WHEREFORE, JBWK, LLC respectfully requests that this Honorable Court enter judgment in favor of JBWK, LLC and against West Neck Community Association, Inc., dismissing this case with prejudice, awarding JBWK, LLC its attorneys fees and costs as permitted under the Declaration, and granting such further relief as this Honorable Court deems equitable, just and proper.

## COUNTERCLAIM OF JBWK, LLC
## AGAINST WEST NECK COMMUNITY ASSOCIATION, INC.

NOW COMES JBWK, LLC ("JBWK" or the "Company"), by counsel, and files this Counterclaim (the "Counterclaim") against West Neck Community Association, Inc. (the "Association").  And for its Counterclaim, JBWK respectfully states as follows:

## Parties

1.      JBWK is a limited liability company organized and existing under the laws of the state of New Mexico.  JBWK's sole member is not a citizen of the Commonwealth of Virginia, and indeed has not lived in Virginia for several years.  JBWK is also the successor in interest by merger to WC Capital, LLC ("WCC"), a limited liability company likewise organized under the laws of the state of New Mexico and whose sole member was, at all relevant times, also the sole member of JBWK.

2.      The Association is a non-stock corporation organized and existing under the laws of the Commonwealth of Virginia.  The Association maintains its principal place of business in Virginia Beach, Virginia.

## Jurisdiction and Venue

3.      This Court has jurisdiction over the matters at issue pursuant to 28 U.S.C. §1332(a) in that (i) the parties are citizens of different States; and (ii) the amount at issue exceeds $75,000.

4.      Venue properly lies within this judicial District by virtue of 28 U.S.C. §1391 because (i) the defendant resides in Virginia Beach, Virginia; and (ii) the property which is the subject of this case is situated within Virginia Beach, Virginia.

5.      Divisional venue is proper by virtue of Local Civil Rule 3(B)(3).

## Preliminary Statement

6.      The instant dispute concerns the parties' rights under that certain Declaration of Covenants, Conditions, and Restrictions for West Neck (the "Declaration"), which was recorded in the land records for the City of Virginia Beach, Virginia on March 27, 2000.  As noted previously, a true and correct copy of the Declaration is attached hereto as Exhibit A.  The genesis of this dispute is relatively simple: since at least May of 2021, the Association, through

8

its Board, has sought to exert control over roughly 178 acres of real property owned by JBWK – steadfastly ignoring the plain language of the Declaration in the hopes of achieving that result.

7.      The property at issue is located in a development known as West Neck.  The Declaration is structured to initially vest control over the entire development in Baymark Construction Corporation ("Baymark"), as the developer and initial so-called "Declarant". Under the terms of that instrument, as the residential portion of the development is built, control over those residential elements shifts to the Association.  Not surprisingly, however, the Declaration does not permit the Association to exert control over the Declarant or its property – including the portion designated as a "Private Amenity", which was initially used as a golf course.  To that end, the Declaration contains, *inter alia,* provisions stating: (i) "No rule or action by the Association shall interfere with the ownership, transfer, use or operation of any Private Amenity"; and (ii) "This Article [enacting the Architectural Guidelines] shall not apply to the Declarant's activities".  Likewise, Section 8.4 of the Declaration, which governs compliance and enforcement of the Declaration, is limited by its terms to "Owners" and occupants of "Units".

8.      The Declaration permits Baymark, as the initial Declarant, to assign to one or more third parties the special rights and privileges granted to the Declarant under the Declaration.  In 2021, Baymark did exactly that – assigning the so-called declarant rights to JBWK.  As such, the Association lacks the authority to control either JBWK or the property at issue.

9.      Unwilling to abide by the Declaration as written, in August of 2022 the Association attempted to amend that instrument to (i) re-define the term "Declarant" to mean the Association (as opposed to Baymark or its assigns); (ii) eliminate the majority of the declarant rights; and (iii) otherwise expand the Association's enforcement rights to encompass JBWK and

the property at issue.  The fact that the Association felt the need to try and amend the Declaration is telling, since the purported amendments would not have been necessary if it originally had control over JBWK or its property.

10.    More to the point, the Association took these actions despite express language in the Declaration stating: "No amendment may remove, revoke, or modify any right or privilege of Declarant . . . without the written consent of Declarant . .  (or the assignee of such right or privilege)."

11.    Although the Association's attempted actions are a direct violation of the Declaration, it has nevertheless threatened enforcement actions against JBWK and its property, including self-help remedies, if JBWK does not concede to the Association's demands.

12.    Accordingly, JBWK files this Counterclaim to (i) obtain declaratory judgment as to the parties' respective rights under the Declaration; and (ii) obtain injunctive relief to prohibit the Association from further interfering with JBWK and its property, and otherwise violating the Declaration.

### Facts Common to all Counts

A.    The Property:

13.    In April of 2020, WCC purchased at a foreclosure sale six (6) parcels of real property (collectively, the "Property") located in Virginia Beach, Virginia, and encompassing roughly 178 acres in the aggregate.  The tax identification number for each of the parcels comprising the Property are as follows: (i) 14938595200000; (ii) 14936674360000; (iii) 14936378940000; (iv) 14935439520000; (v) 14937578690000; and (vi) 14937597050000.

14.    Because the parcels making up the Property have been subdivided and redesignate for tax purposes, it is unclear whether some or all of the Property was included within the scope of the initial Declaration,  or if initially included whether some or all of the Property remains

subject to the Declaration.  JBWK files this Counterclaim under the assumption that the Property is subject to the Declaration, but reserves its right to contest that fact should discovery prove otherwise.

15.     The Property was initially part of a planned community development know as West Neck, which was constructed by Baymark.  The Property was initially operated as a golf course by an affiliate of Baymark until it ceased operations in September of 2019, roughly six (6) months prior to WCC acquiring title.

16.     After WCC acquired the Property at foreclosure, it entered into a lease with JBWK, its affiliate by reason of common ownership, so that JBWK could serve as the operating entity for any activities on the Property.

17.     Upon taking title to the Property, JBWK and WCC engaged the services of Mr. Chris Coleman, who has extensive experience in operating golf course properties throughout the East Coast, including serving as Manager and Regional Director for PGA TOUR Golf Course Properties in its Tournament Players Club ("TPC"), to organize and supervise maintenance at the Property.  Mr. Coleman's job was made considerably more difficult due to COVID and the restrictions imposed on businesses in 2020.  Nevertheless, he was able to hire crews to maintain the Property on a fairly regular basis.  While JBWK left uncut certain areas which are outside of the typical lines of sight or of a more natural state, the fairways were being generally maintained. Attached hereto and marked collectively as **Exhibit B** are pictures of the Real Property taken in August of 2020 after one such cut.

18.     JBWK also looked the other way as individuals from neighboring properties utilized the cart paths and open spaces at the Property for walking trails and other recreational

activities – something which JBWK felt was important given the then-prevailing COVID lockdowns.

19.     The cost of maintaining the Property was a substantial burden on JBWK. Nevertheless, from the outset it voluntarily undertook that burden in the hopes of establishing a good relationship with the neighboring property owners and the City.  Unfortunately, that turned out to be impossible.

20.     At that same time JBWK was cutting the Property and looking the other way while neighboring residents were using it as a park, various members of the Association were coming onto the Property for the express purpose of looking for conditions which those individuals could use as the basis for lodging complaints with the City of Virginia Beach (the "City").

21.     These individuals then began a campaign in order to pressure the City first to try and criminally prosecute JBWK for allowing portions of the grass on a 178-acre parcel of property (the majority of which is zoned Preservation) to grow higher than ten inches in what was alleged to be a violation of the Virginia Beach City Code, and then to file a civil suit against JBWK on those same grounds.

22.     Not surprisingly, once it became clear that the Association had no interest in establishing a good relationship with JBWK, and instead intended to essentially weaponize the City against it, JBWK stopped spending money on maintenance and stopped "looking the other way" while the Association's members used the Property as a park.

23.     Ultimately, the criminal action was null prossed by the City, and the civil suit was settled after being removed to this Court.[2]

24.     At this point, while the Property is generally posted as "No Trespassing" and indeed is now being patrolled by private security, JBWK has authorized certain individuals in the surrounding area to use the cart paths and open areas of the Property for walking and similar recreational activities, and is exploring opening the Property to additional individuals, with the hope that more frequent use of the Property by those with authorization will deter trespassing by neighboring residents and the inevitable corresponding damage to the Property which has thus far ensued.

        B.     The Instant Dispute:

25.     After acquiring the Property, JBWK entered into an agreement with Coastal Landscapes, a local landscaping and nursery company, for Coastal to plant roughly 700 trees on the Property for the purpose of cultivation and resale.  JBWK has since considered adding up to 10,000 additional trees in order to further reduce its holding costs.

26.     On December 29, 2021, counsel for the Association sent an email to JBWK complaining about the trees which had been planted at the Property.  A true and correct copy of the December 29, 2021 email is attached hereto as **Exhibit C**.

27.     JBWK replied to the email on December 30, 2021.  A true and correct copy of the December 30, 2021 email is attached hereto as **Exhibit D**.

28.     During the first week of January, 2022, JBWK received a letter dated December 29, 2021 from counsel for the Association (the "December 29 Letter").  The December 29 Letter, a copy of which is attached hereto as **Exhibit E**, asserted that JBWK's conduct in, *inter alia,*

---

[2] That case was styled *City of Virginia Beach v. WC Capital, LLC,* Civil Action No. 2:21-cv-000372 (the "City Litigation").

planting nursery trees on the Property constituted a violation of the Architectural Guidelines imposed by the Association.

29.     On or about February 15, 2022, the Association filed, in the General District Court for the City of Virginia Beach, Virginia, a Warrant in Debt (the "First Warrant in Debt") seeking to impose a $900.00 fine against JBWK.

30.     Upon receiving a copy of the First Warrant in Debt, JBWK inquired as to the basis for the asserted $900.00 claim.  In response, the Association indicated that:

> The basis for the underlying claim is failure to abide by the Declaration with respect to the landscaping and the fence (architectural controls).  We are scheduling a Due Process hearing and if the issues are not corrected, they will be fined $10 day [sic] for 90 days pursuant to the Act.  I assume you will not participate since your client has taken the position they are not going subject [sic] to the declaration architectural controls. . . .

When JBWK inquired as to why the Association had filed suit based upon a fine which, the merits notwithstanding, had not yet accrued, the Association replied:

> The Warrant was filed.  I wanted to wait for the Due Process meeting, but it looks like it went out.  But, as we both know, its not about the money, so if you have an issue with it going out early we can address that. . . .

A true and correct copy of the email exchange setting forth these discussions is attached hereto as **Exhibit F**.

31.     On March 1, 2022, the Association sent JBWK a letter setting the so-called "Due Process Hearing" and providing the alleged legal basis for the Association's claim underlying its already filed Warrant in Debt.  A true and correct copy of the March 1, 2022 letter is attached hereto as **Exhibit G**.

32.     On March 30, 2022, the day prior to the Return Date, the Association sent a letter to the Clerk of the Virginia Beach General District Court seeking to non-suit the First Warrant in Debt.

33.     During the summer of 2022, JBWK informed the Association that it intended to plant an additional 7,000 to 10,000 nursery trees on the Property.

34.     As discussed in greater detail below, rather than discuss the issue with JBWK, the Association instead chose to try and amend the Declarations without notice to or the approval of JBWK – and in violation of the plain language of that instrument – in the hopes of stripping JBWK of its rights with respect to the Property.

35.     When JBWK learned of the attempted amendment and the Association's continuing objection to the planting of additional trees on the Property, JBWK asked the Association whether it would be willing to submit the dispute to mediation.

36.     On September 1, 2022, counsel for JBWK emailed counsel for the Association to inquire further into that issue, and to advise that JBWK had contacted the McCammon Group in order to obtain mediation dates.  In response, the Association suggested that its Board could not schedule a meeting until mid-September and thus requested that JBWK wait until after the Board meeting to pick a date for mediation.

37.     On September 8, 2022, the Association again wrote, this time indicating that its Board would be meeting on September 20, 2022 and agreeing to a tentative mediation date of October 11, 2022.

38.     JBWK replied by indicating that the tentative mediation date was agreeable.

39.     On or about September 28, 2022, just eight (8) days after the September 20 Board

meeting and prior to the mediation date, the Association filed a Warrant in Debt (the "Second Warrant in Debt") against JBWK in the Virginia Beach General District Court.

40.     That action was removed to this Court.

C.     The Declaration:

41.     As noted previously, the overall structure of the Declaration vested in Baymark, as the initial Declarant, control over the entire development, and as the residential portions were constructed, to shift control over those residential elements to the Association.  The Association is not, however, given control over either (i) the Declarant, or those individuals or entities two whom it has assigned the so-called declarant rights; or (ii) the Property.  This structure is evident in numerous provisions within the Declaration, but is perhaps best illustrated by the following provisions:

> "No rule or action by the Association shall interfere with the ownership, transfer, use, or operation of any Private Amenity." *Exhibit A, §4.4(i).*

> "[The Architectural Guidelines] shall not apply to Declarant's activities …".  *Exhibit A. §5.1.*

42.     Moreover, the compliance and enforcement provisions of the Declaration are limited to "Owners" and occupants of "Units", neither of which applies to JBWK or the Property.  *Exhibit A, §8.4.* ("Every Owner and occupant of a Unit shall comply with the Governing Documents.")

a.     JBWK is the holder of the Declarant Rights.

43.     As noted above, Baymark, as the initial Declarant, was entitled to assign some or all of its rights under the Declaration (the "Declarant Rights") to a third party.

44.     To that end, the Declaration states:

> Any or all of Declarant's special rights and obligations set forth in [the] Declaration or the By-Laws may be transferred in whole or in

> part to other Persons; provided, the transfer shall not reduce an obligation nor enlarge a right beyond that which Declarant has under [the] Declaration or the By-Laws.  No such transfer or assignment shall be effective unless it is in a written instrument which Declarant signs and Records.

*Exhibit A, §11.7.*

45.     On November 15, 2021, Baymark assigned to JBWK, *inter alia,* Baymark's Declarant Rights pursuant to an instrument titled Deed of Assignment and Bill of Sale.  The Deed of Assignment and Bill of Sale was recorded in the land records for the City of Virginia Beach on November 22, 2021.  On June 2, 2022, the parties recorded a Corrected Deed of Assignment and Bill of Sale in the land records for the City of Virginia Beach in order to correct a scrivener's error in the first Deed of Assignment.  A true and correct copy of the Deed of Assignment and the Corrected Deed of Assignment are attached hereto and marked collectively as **<u>Exhibit H</u>**.

46.     As the assignee of the Declarant Rights, JBWK is entitled to all of the protections and rights granted to the Declarant under the Declaration.

47.     Among the rights granted to JBWK is the ability to engage in activities on the Property without restriction or limitation by the Association.

48.     Even without the Declarant Rights, however, the Association cannot prohibit JBWK from operating the Property – including as a tree farm – because (i) the Property falls within the definition of a Private Amenity under the Declaration; and (ii) the Association's enforcement rights are limited to actions against Owners.

      b.     <u>The Association's amendments to the Declaration are not valid</u>:

49.     As noted above, in the summer of 2022, JBWK informed the Association that it was considering planting and cultivating an additional 7,000 to 10,000 nursery trees.

17

50.     Upon learning that JBWK intended to plant additional trees on the Property, the Association, without notice to JBWK and without complying with the dispute resolution procedures in the Declaration, attempted to amend the Declaration in order to (i) re-define the term "Declarant" to  mean "the Association"; (ii) eliminate the majority of the Declarant Rights; and (iii) change other defined terms and provisions so as to allow the Association to exert control over JBWK and the Property.

51.     To that end, on or about August 16, 2022, the Association executed two documents, each titled Amendment to Declaration of Covenants, Conditions and Restrictions for West Neck.  The first such document was recorded in the land records for the City of Virginia Beach on August 18, 2022 as instrument number 202203045087.001 (the "First Amendment"). The second such document was recorded in the land records for the City of Virginia Beach on August 18, 2022 as instrument number 2022030045088.001 (the "Second Amendment").  A true and correct copy of the First Amendment and the Second Amendment are attached hereto and marked collectively as **Exhibit I**.

52.     The purpose of the First Amendment is apparently to redefine the term "Owner" so that the Association could exert control over JBWK.

53.     Under the Declaration, the Association can only exert authority over an Owner. *Declaration, p.30*.  An "Owner" is defined as an individual or entity who holds the record title to a Unit.  *Exhibit A, p.6* (defining Owner as "[o]ne or more Persons who hold the record title to any Unit. . .").  A Unit is any parcel of real property used as a residential dwelling, or intended for use as a residential dwelling on the Master Plan for West Neck.  *Exhibit A, p. 7.*

54.     The Property is not a Unit as defined under the Declaration, and thus, JBWK is not an Owner.  Accordingly, the Association had no right to exert control over JBWK or the Property through fines, self-help or any other means.

55.     In an apparent attempt to resolve this problem, the First Amendment purports to create a new defined term, a "Parcel", which includes any property which is not a Unit or a Private Amenity under the Declaration.  *First Amendment, p.2.*[3]

56.     The First Amendment then changes the definition of "Owner" from someone who holds title to a Unit, to someone who holds title to a Unit, a Parcel or a Private Amenity.  *First Amendment, p.2* (defining Owner as "[o]ne or more Persons who hold the record title to any Unit, Parcel, or Private Amenity.")  The First Amendment then seeks to impose additional obligations on Owners in order to further expand the Association's control over the Property.

57.     The purpose of the Second Amendment is to try and transfer the Declarant Rights from JBWK to the Association by redefining the term Declarant to mean the Association, and then eliminating a number of those rights.  To that end, the Second Amendment states:

> The definition of "Declarant" in Article II is deleted in its entirety and replaced with the following language . . .
>
> **"Declarant": Except with respect to Article XVII of this Declaration, any reference in the Declaration to "Declarant" shall mean "Association."  Nothing contained herein shall be construed to amend Article XVII of this Declaration.**
>
> Article XI titled, "Additional Rights Reserved to Declarant" is deleted in its entirety. . .
>
> Article XXI, Section 21.1 [granting the Declarant a right to amend the Declaration for limited purposes] is deleted in its entirety. . ..

*Second Amendment*, p.2 (emphasis in original).

---

[3] The Association appears to take the position that because the golf course ceased operations prior to JBWK taking title, the Property is not a Private Amenity.  That too is incorrect.

58.     Under the plain language of the Declaration, the Association was not permitted to amend the Declaration in order to alter the Declarant Rights.

59.     Section 21.2 of the Declaration states, in pertinent part: "Except as otherwise specifically provided above and elsewhere in this Declaration, this Declaration may be amended only by the affirmative vote or written consent, or any combination thereof, of Voting Members representing 75% of the total Class "A" votes in the Association . . . and Declarant's consent, so long as Declarant owns any property subject to this Declaration or which may become subject to this Declaration in accordance with Section 10.1. *Exhibit A, §21.2.*

60.     Further, Section 21.3 of the Declaration states: "No amendment may remove, revoke, or modify any right or privilege of Declarant or the Class "B" Member without the written consent of Declarant or the Class "B" Member, respectively (or the assignee of such right or privilege)." *Exhibit A, §21.3.*

61.     Neither the First Amendment nor the Second Amendment were approved or consented to by the Declarant.  Accordingly, the First Amendment and the Second Amendment are invalid.

D.     <u>As a Private Amenity the Property is not subject to Association control</u>:

62.     Even without the Declarant Rights, and regardless of the fact that JBWK is not an "Owner", its Property still would not be subject to Association control since it is a "Private Amenity", as that term is defined in the Declaration.

63.     The Declaration defines a "Private Amenity" as "Certain real property and any improvements and facilities thereon located adjacent to, in the vicinity of, or within the Properties, which are privately owned and operated by persons other than the Association for recreational and related purposes, on a club membership basis or otherwise. . . . *Exhibit A, Art. II.*

64.     The current use of the Property qualifies as a Private Amenity.  As noted above, the Property, *inter alia*, is open to walking and other recreational uses by a select group of individuals who are granted permission to do so by JBWK.

65.     The Declaration states, among other things, that:  "No rule or action by the Association shall interfere with the ownership, transfer, use, or operation of any Private Amenity."  *Exhibit A, §4.4(i).*

66.     The Declaration contains other provisions which prohibit the Association from interfering with JBWK's use of the Property.

67.     In light of the above, the Association has no right to interfere with JBWK's use of the Property or otherwise take any enforcement actions against JBWK or the Property.

## Count I
## (Declaratory Relief)

68.     JWBK repeats and realleges the allegations in paragraphs 1 through 67, above, as if fully set forth herein.

69.     The Declaration establishes the Declarant Rights, which give the holder of those rights the ability to operate properties which are subject to the Declaration without interference from the Association.

70.     The Declarant Rights were transferred from Baymark to JBWK.

71.     The Declarant Rights are valid and enforceable rights held by JBWK.

72.     As the holder of the Declarant Rights, JBWK is entitled to plant additional trees on its Property, and is otherwise free from any restrictions which the Association may seek to impose in relation to the Property inconsistent with the Declaration.

73.     In addition, the First Amendment and the Second Amendment were executed without authority since the Association did not have approval from the Declarant at the time each

Amendment was executed.  Accordingly, both the First Amendment and the Second Amendment are not effective to alter JBWK's rights under the Declaration.

74.    The Association refuses to acknowledge that it is not entitled to take enforcement actions against JBWK or its Property, and has taken action and threatened to take further action against JBWK and the Property in contravention of the Declaration.

75.    The Association's enforcement rights are limited to actions against "Owners", as that term is defined in the Declaration.  The Association is not entitled to take any enforcement actions against JBWK or the Property because, among other things: (i) JBWK is the holder of the Declarant Rights; (ii) JBWK is not an Owner; and (iii) the Property is a Private Amenity.

76.    Before JBWK can enter into a contract to plant more trees on the Property or take other potential actions with respect to the Property which would require a capital investment, it needs to understand and obtain a ruling on the parties' respective rights under the Declaration – including whether the Association has the ability to prohibit JBWK from planting additional nursery trees.

77.    A justiciable controversy exists between the parties with respect to their rights under the Declaration.

78.    Accordingly, JBWK requests that this Court enter judgment declaring that (i) JBWK is the Declarant and holder of and thus entitled to exercise the Declarant Rights under the Declaration; (ii) the First Amendment and the Second Amendment are invalid, void and of no effect because they were executed and recorded by the Association without proper authority; and (iii) neither JBWK nor the Property is subject to any enforcement actions by the Association.

## Count II
### (Injunctive Relief)

79.     JWBK repeats and realleges the allegations in paragraphs 1 through 78, above, as if fully set forth herein.

80.     In prior correspondence between the parties, the Association has asserted that it has the right to utilize "self-help" to remedy what it believes to be violations of the Declaration by JBWK, including JBWK's actions in planting trees on the Property.

81.     As noted above, the Association is not entitled to exert control over JBWK or the Property, including exercising "self-help" remedies by the Association would be a violation of the Declaration and Virginia law.

82.     The Property is currently posted with "No Trespassing" signs, and thus the Association has no right to enter onto the Property without JBWK's express permission.

83.     Despite that fact, members of the Association have a history of trespassing on the Property and causing damage to the Property.

84.     Stormwater facilities on the Property and certain of the common areas owned by the Association are inter-connected and regulated under the Declaration.

85.     It appears that the Association may be drawing water from the stormwater system in violation of the Declaration and in derogation of JBWK's rights.

86.     It is not clear if the Association is engaged in additional violations of the Declaration at this time.

87.     Given the unique nature of the Property, monetary damages may not be sufficient to adequately compensate JBWK in the event that the Association violates the Declaration.

88.     JBWK seeks a permanent injunction prohibiting the Association from (i) entering onto the Property without JBWK's express permission or otherwise interfering with JBWK's

Declarant Rights under the Declaration, and (ii) otherwise continuing to violate the terms of the Declaration.

WHEREFORE, JBWK, LLC respectfully request that this Honorable Court enter Judgment in its favor, and against the Association:

i.    Determining that JBWK is the Declarant and the holder of the Declarant Rights under the terms of the Declaration;

ii.   Determining that JBWK is entitled to plant trees and otherwise utilize its Property as it sees fit, subject only to federal, state and local laws and ordinances;

iii.  Enjoining the Association from entering onto JBWK's Property or further interfering with its rights under the Declaration; and

iv.   Granting such further relief as this Honorable Court deems equitable, just and proper.

Respectfully submitted,

JBWK, LLC

*/s/ John D. McIntyre*
John D. McIntyre (VSB No. 35925)
Solomon H. Ashby, Jr. (VSB No. 39040)
MCINTYRE STEIN & ASHBY, PLLC
101 West Main Street, Suite 920
Norfolk, Virginia 23510
Telephone: (757) 961-3900
Facsimile: (757) 961-3966
jmcintyre@msa.law
sashby@msa.law
*Counsel for JBWK, LLC*